## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GUST, INC.,                                    :
                                               :
            Plaintiffs                         :
                                               :
      v.                                       :    **CIVIL ACTION NO.: 1:15-cv-06192**
                                               :
ALPHACAP VENTURES, LLC.                        :
                                               :
            Defendant                          :
                                               :

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Gust, Inc. f/k/a AngelSoft LLC ("Gust"), by and through its attorneys, White and Williams LLP,  hereby states the following for its Complaint for *inter alia* Declaratory Judgment against AlphaCap Ventures, LLC ("AlphaCap"):

## NOTICE OF RELATED CASE

Please note that the following case, currently before the Honorable Robert W. Schroeder, III of the United States District Court for the Eastern District of Texas, is related to this filing: *AlphaCap Ventures, LLC v. Angelsoft LLC d/b/a Gust*, 15-cv-00056-RWS (" the Eastern District of Texas case").

The instant case and the Eastern District of Texas case involve the same parties and patents.  The Eastern District of Texas case is currently conducting discovery as part of Gust's motion to transfer to the Southern District of New York. The Eastern District of Texas case includes AlphaCap's claims of patent infringement and Gust's declaratory judgment claims of invalidity and non-infringement.  The Eastern District of Texas case does not include Gust's claims of Abuse of Process, Tortious Interference with Contract,  Tortious Interference with

Prospective Economic Advantage, and Violation of Section 2 of the Sherman Act, included herein.

Gust, by and through their attorneys White and Williams LLP, submit the following Complaint against AlphaCap based on its knowing, willful and malicious assertion, in bad faith and with intent to extort rents from Gust and others through objectively baseless claims of infringement predicated upon invalid and unenforceable patents. Gust also seeks a declaration that AlphaCap's patents are invalid, unenforceable, and not infringed by Gust, and seeks relief under 28 U.S.C. § 2201 as well as relief under 15 U.S.C. § 2, 35 U.S.C. § 235, and the common law of New York.

## NATURE OF THE ACTION

1.      This Complaint is an action arising under the Declaratory Judgment Act 28 U.S.C. § 2201, *et seq.* and the patent laws of the United States, 35 U.S.C. § 1, et seq. for a judgment declaring that the claims of United States Patent No.'s 7,848,976 ("the '976 Patent"), 7,908,208 ("the '208' Patent"), and 8,433,630 ("the '630 Patent) (collectively "the Asserted Patents") are invalid, unenforceable and not infringed by Gust. True and correct copies of the '976 Patent, the '208' Patent, and the '630 Patent are attached hereto as Exhibit A.

## THE PARTIES

2.      Gust, Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 158 West 29th Street, New York, New York 10001.

3.      Defendant AlphaCap is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 695 Andrews Street, Livermore, California 94551.

4.      AlphaCap's business is the licensing of intellectual property assets, including patents it does not practice. AlphaCap is what is commonly referred as a Non-Practicing Entity ("NPE") or "patent troll" because it does not practice the Asserted Patents but sues others regardless of, or with direct knowledge of, the frivolity of such claims to extract at least the nuisance value of a patent infringement lawsuit.

## JURISDICTION AND VENUE

5.      This is an action for claims arising under, *inter alia,* the United States patent statute, 35 U.S.C. § 1 *et seq*. This Court has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under 38 U.S.C. § 1338(a).

6.      This Court has supplemental jurisdiction over the state law claims made herein under 28 U.S.C. §§ 1332 and 1367 as the federal and state law claims arise out of a common nucleus of operative fact, namely the frivolous lawsuits instituted by AlphaCap in the Eastern District of Texas.

7.      This Court has personal jurisdiction over AlphaCap because AlphaCap has at least minimum contacts with the State of New York.

8.      Venue is proper in this judicial jurisdiction pursuant to 28 U.S.C. § 1391(b), (d) and 1400(b) because AlphaCap resides in this District for the purposes of venue, insofar as it is subject to personal jurisdiction in this District, has committed tortious acts in this District, solicits business in this District, and conducts other business in this District.

## FACTS GIVING RISE TO THE COMPLAINT

9.      The Asserted Patents purport to cover computer programs allowing investors to search for startup companies seeking investment. In one sense, these programs play

"matchmaker" just as helpful grandmothers have done for their loved ones for thousands of years. Because multiple investors may invest in a single startup using these programs, such programs may be categorized under the recently-coined term "crowdfunding". In addition to being ancient, these matchmaking and crowdfunding concepts are "abstract" and therefore unpatentable under current U.S. patent laws.

10.     Upon information and belief, the concepts of matchmaking and crowdfunding are even older and more basic than the concepts of hedging financial transactions, which the U.S. Supreme Court addressed in *Bilski* (2008), or intermediated settlement, addressed by the Court in *Alice* (2014). In those cases the U.S. Supreme Court determined such abstract ideas did not constitute patentable subject matter under 35 U.S.C. § 101.

11.     On April 5, 2012, the Jumpstart Our Business Startups Act was signed into law by President Barack Obama, which among other things was intended to promote equity crowdfunding by authorizing the Securities and Exchange Commission ("SEC") to promulgate regulations authorizing crowdfunding activities practical for small and medium-sized businesses, thereby promoting job growth.

12.     On June 19, 2014, the U.S. Supreme Court issued its decision in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 134 S.Ct. 2347 (2014), finding abstract subject matter not eligible for patent protection merely because it requires "generic computer implementation."

13.     While the notion of crowdfunding has been in the public domain since at least the 1850s, and matchmakers long before that, AlphaCap's Asserted Patents claim to have been invented in 2003 or later.

14.     Upon information and belief, prior to the Supreme Court determination in *Alice*, AlphaCap was monitoring the case and was aware that the Supreme Court's ruling could have significant implications for some or all of its patent assets. As the validity of business method patents on computer-related applications is a critical and necessary component of AlphaCap's continued viability as a going concern, the *Alice* case was one AlphaCap watched closely.

15.     Upon information and belief, AlphaCap became aware of the invalidity of its patents almost immediately after the *Alice* decision was handed down by the Supreme Court. Specifically, after the *Alice* decision came down AlphaCap received legal advice as to the '976 Patent, the '208 Patent, and the '630 Patent, which indicated that these patents would be found invalid if ever tested in court.

16.     As early as June 19, 2014, and upon information and belief long before that time, AlphaCap knew that the Asserted Patents do not cover any "inventive concept" under 35 U.S.C. § 101 that Gust makes, uses, sells, offers to sell or imports.

17.     AlphaCap and its counsel knew the *Alice* decision would be applied by other courts and, when placed at issue, a court or the USPTO would formally render the Asserted Patents invalid.

18.     AlphaCap also knew that it had to move the case along quickly so that it could reach a settlement with as many defendants as possible before post-*Alice* 35 U.S.C. § 101 invalidations of business-method patents became increasingly common, including those relying upon computer implementation of abstract ideas to create patentable subject matter.

19.     On September 16, 2014, defendants' summary judgment motion in *Kickstarter, Inc. v. Fan Funded, LLC*, discussed *infra* herein, had briefed the issue of whether a crowdfunder could infringe a patent merely by virtue of the implementation of crowdfunding activities

through a computer. Upon information and belief, AlphaCap was aware of this development, and knew that a decision on the motion had the potential to substantially reduce if not completely obliterate the value of the Asserted Patents.

20.     On January 23, 2015, AlphaCap instituted the above-referenced patent infringement litigations ("the Texas Actions") in the Eastern District of Texas against nearly every major crowdfunding entity in the United States, including Kickstarter, Indiegogo, CircleUp, RealtyMogul, Gust, AngelList, GoFundMe, LendingTree, iFunding (Innovational Funding) and RocketHub (collectively referred to hereinafter as "the Crowdfunding Defendants"). All of those cases settled, except the pending case against Gust f/k/a Angelsoft. True and correct copies of the various complaints in these matters are attached hereto as Exhibit B.

21.     AlphaCap intentionally filed ten (10) separate actions in the Eastern District of Texas that involved the exact same patents, the exact same claims, and were initiated by practically identical complaints. There was not a single factual allegation to materially differentiate one case from the other.

22.     AlphaCap selected the Eastern District of Texas despite the fact that Gust and other Crowdfunding Defendants lacked contacts with or relationship to that forum. AlphaCap did this because it is a "rocket docket" jurisdiction that would facilitate AlphaCap's plan to frivolously extract value from lawsuits against Gust and the Crowdfunding Defendants based on invalid patents before the full effects of the *Alice* decision were felt.

23.     These sham litigation tactics allowed AlphaCap to avoid the potential precedential and/or estoppel effects of the decision handed down by the Honorable Katherine Polk Failla in *Kickstarter, Inc. v. Fan Funded, LLC*, discussed *infra* herein, thereby maximizing AlphaCap's

potential to extract as much value as it could from the various lawsuits. That motion had already been fully briefed before this Court by the time AlphaCap filed the frivolous Texas Actions, but would not be decided until June 2015.

24. AlphaCap abused the legal process by filing ten (10) separate but identical lawsuits in the Eastern District of Texas against every major crowdfunding entity in the U.S., not to protect any valid intellectual property rights, but to achieve a collateral objective by using the legal process to force Gust and Crowdfunding Defendants to settle with AlphaCap before a determination on merits revealed the frivolity of their claims. Upon information and belief, after a few successful settlements, AlphaCap hoped every current and future crowdfunding entity would fall in line and pay a licensing fee to AlphaCap to "practice" its invalid patents.

25. Upon information and belief, AlphaCap's institution of patent litigation against Gust was carried out in bad faith and/or with willful blindness as AlphaCap knew of the invalidity of the Asserted Patents at all times prior to, during, and/or after the institution of patent infringement litigation against Gust and the Crowdfunding Defendants.

26. Upon information and belief, AlphaCap's institution of patent litigation against Gust was carried out in bad faith and/or with willful blindness as AlphaCap knew that Gust, as well as the other Crowdfunding Defendants, were not infringing the Asserted Patents at any time, as one cannot infringe an invalid patent.

27. Upon information and belief, despite AlphaCap's knowledge that the Asserted Patents were almost certainly invalid after the Supreme Court's ruling in *Alice*, it nonetheless persisted in attempting to extract as much value as possible from its frivolous lawsuits against Gust and the Crowdfunding Defendants.

15750450v.1

28.     On March 11, 2015, AlphaCap filed a Notice of Voluntary Dismissal with Prejudice thereby voluntarily dropping its claims against California Product Shop, Inc. d/b/a GoFundMe. Upon information and belief, AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuit if not substantially more.

29.     On April 21, 2015 AlphaCap filed a Notice of Voluntary Dismissal with Prejudice thereby voluntarily dropping its claims against Lending Tree. Upon information and belief, AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuit if not substantially more.

30.     On April 30, 2015 AlphaCap filed a Notice of Voluntary Dismissal with Prejudice thereby voluntarily dropping its claims against AngelList, CircleUp, Indiegogo, Kickstarter and RealtyMogul. Upon information and belief, AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuits if not substantially more.

31.     On July 1, 2015, AlphaCap filed a Stipulation of Dismissal thereby voluntarily dropping its claims against iFunding (Innovational Funding). Upon information and belief, AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuit if not substantially more.

32.     On July 23, 2015, AlphaCap filed a Notice of Voluntary Dismissal with Prejudice thereby voluntarily dropping its claims against Rockethub. Upon information and belief, AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuit if not substantially more.

33.     Upon information and belief, from the time it filed the Texas Actions to the present AlphaCap was successful in extracting at least the nuisance value of its frivolous infringement lawsuits, and upon information and belief substantially more than that amount,

from the following nine (9) Crowdfunding Defendants out of the ten (10) that were originally sued: AngelList, CircleUp, Indiegogo, Kickstarter, RealtyMogul, GoFundMe, Rockethub, iFunding, Lending Tree ("Settlement Defendants").

34.     Upon information and belief, AlphaCap had no intention of obtaining a determination on the merits, either as to their validity of the Asserted Patents or whether Gust or any of the Crowdfunding Defendants actually infringed those patents.

35.     Upon information and belief, AlphaCap was attempting to avoid a determination as to the validity of the Asserted Patents, as it would expose their invalidity. With *Alice* having been decided and with defendants' summary judgment motion fully briefed in *FanFunded*, AlphaCap decided it would have to frivolously sue and settle with all the Crowdfunding Defendants quickly if it was to extract any rents from the Crowdfunding Defendants. AlphaCap was simply hoping for settlements before any determinations on the merits were made.

36.     Not only were the Texas Actions frivolously filed, but AlphaCap's choices to continue the litigation to the present day constitute independent acts of bad faith and/or of willful blindness.

37.     On June 29, 2015, the U.S. District Court for the Southern District of New York issued an opinion authored by the Honorable Katherine Polk Failla on the viability of patent infringement lawsuits purported covering Internet-based crowdfunding. In that decision, Judge Failla noted that "In only one case since the issuance of *Alice* has the Federal Circuit held a computer-implemented method patent to be eligible." *Kickstarter, Inc. v. Fan Funded, LLC*, 11 CIV. 6909 KPF, 2015 WL 3947178, at *10 (S.D.N.Y. June 29, 2015) (hereinafter "*FanFunded*"). As the court concluded, "While the concept of fan-funding may have been made a more realistic and fruitful endeavor with the advent of widespread Internet access, 'cloaking

[that] otherwise abstract idea in the guise of a computer-implemented claim' does not bring it within Section 101." *Id* at *13.

38.     The court further noted that any such similar patent would suffer a similar fate: "Whether the abstract idea in play here is defined as 'crowd-funding,' 'crowd-based funding,' 'fan-funding,' 'incentive-based patronage,' 'incentivized crowd-funding,' or some other combination of these words is of no moment: the abstract concept at play in the Patent remains the same" and is ineligible for protection. *Kickstarter, Inc. v. Fan Funded, LLC*, 11 CIV. 6909 KPF, 2015 WL 3947178, at *10 (S.D.N.Y. June 29, 2015).

39.     Upon information and belief, AlphaCap was monitoring the *Kickstarter, Inc. v. Fan Funded, LLC* case and was aware of the decision when it was issued. AlphaCap was further aware that the issuance of this decision only further confirmed the frivolity of patent claims asserted against Internet crowdfunders.

40.     Upon information and belief, AlphaCap abused the judicial process in an effort to cause harm to Gust when AlphaCap refused to drop its claims against Gust following Judge Failla's decision, a decision which unequivocally illustrated the frivolity of any patent infringement suit against crowdfunders *based on their crowdfunding activity.*

41.     Upon information and belief, AlphaCap knew at the time of that decision that the issue of patent infringement by an Internet crowdfunding platform had already been adjudicated and that it would likely be upheld on appeal.

42.     Upon information and belief, AlphaCap knew that in order to avoid the implications of Judge Failla's decision it would have to reach a settlement with Gust before the decision was affirmed on appeal and before it could gain greater precedential value.

43.     AlphaCap has abused the judicial process by instituting a lawsuit it knew to be frivolous at the time it was filed, attempting to enforce its patents before the full effects of the *Alice* decision could percolate through the courts, utilizing the Eastern District of Texas "rocket docket" in order to carry out its plan quickly, extracting at least the nuisance value of its frivolous claims from the Settlement Defendants, and persisting in the Texas action against Gust notwithstanding *FanFunded* and the slew of decisions that effectively confirmed the invalidity of the Asserted Patents.

44.     Such actions by AlphaCap entitle Gust to attorneys fees under 35 U.S.C. § 285, because AlphaCap's Texas action against Gust is objectively baseless under *Alice* and now *FanFunded*, as it is a patent infringement suit against a crowdfunding platform premised on Internet crowdfunding, which is an abstract idea implemented through a computer. If not objectively baseless solely under *Alice* and *FanFunded*, the Texas Actions are objectively baseless under those decisions in conjunction with the complete lack of factual allegations in the Texas Actions that could materially distinguish them from the rulings in *Alice* and *FanFunded*.

45.     Gust has spent and will continue to spend considerable sums to defend itself in the Texas action unless AlphaCap is enjoined, adjudged against, and sanctioned for its frivolous, objectively baseless, and sham lawsuits against the Crowdfunding Defendants.

## COUNT ONE
## DECLARATION OF NON-INFRINGEMENT OF THE '976 PATENT

46.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

47.     Exhibit A to this Complaint contains a true and correct copy of the '976 Patent.

48.     Defendant has accused Plaintiff's product at Gust.com of infringing one or more claims of the '976 Patent.

49.     No product made, used, sold, offered for sale, or imported by Plaintiff contains each and every element of any claim of the '976 Patent, either literally or under the doctrine of equivalents.

**COUNT TWO**
**DECLARATION OF NON-INFRINGEMENT OF THE '208 PATENT**

50.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

51.     Exhibit A to this Complaint contains a true and correct copy of the '208 Patent.

52.     Defendant has accused Plaintiff's product at Gust.com of infringing one or more claims of the '208 Patent.

53.     No product made, used, sold, offered for sale, or imported by Plaintiff contains each and every element of any claim of the '208 Patent, either literally or under the doctrine of equivalents.

**COUNT THREE**
**DECLARATION OF NON-INFRINGEMENT OF THE '630 PATENT**

54.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

55.     Exhibit A to this Complaint contains a true and correct copy of the '630 Patent.

56.     Defendant has accused Plaintiff's product at Gust.com of infringing one or more claims of the '630 Patent.

15750450v.1

57.     No product made, used, sold, offered for sale, or imported by Plaintiff contains each and every element of any claim of the '630 Patent, either literally or under the doctrine of equivalents.

## COUNT FOUR
## DECLARATION OF INVALIDITY OF THE '976 PATENT

58.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

59.     On information and belief, every element of every claim of the '976 Patent was patented, described in a printed publication or a combination of printed publications, or in public use, on sale, or otherwise available to the public before the effective filing date of the application that led to the '976 Patent.

60.     On information and belief, every element of every claim of the '976 Patent was patented, described in a printed publication or a combination of printed publications, or in public use, on sale, or otherwise available to the public more than a year before the effective filing date of the application that led to the '976 Patent.

61.     Every claim of the '976 Patent is directed to non-statutory subject matter.

62.     Every claim of the '976 Patent fails to point out and distinctly claim the invention.

63.     The '976 Patent does not enable a person having ordinary skill in the art to make and use the invention.

64.     Every claim of the '976 Patent is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.

15750450v.1

**COUNT FIVE**
**DECLARATION OF INVALIDITY OF THE '208 PATENT**

65.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

66.     On information and belief, every element of every claim of the '208 Patent was patented, described in a printed publication or a combination of printed publications, or in public use, on sale, or otherwise available to the public before the effective filing date of the application that led to the '208 Patent.

67.     On information and belief, every element of every claim of the '208 Patent was patented, described in a printed publication or a combination of printed publications, or in public use, on sale, or otherwise available to the public more than a year before the effective filing date of the application that led to the '208 Patent.

68.     Every claim of the '208 Patent is directed to non-statutory subject matter.

69.     Every claim of the '208 Patent fails to point out and distinctly claim the invention.

70.     The '208 Patent does not enable a person having ordinary skill in the art to make and use the invention.

71.     Every claim of the '208 Patent is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.

**COUNT SIX**
**DECLARATION OF INVALIDITY OF THE '630 PATENT**

72.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

73.     On information and belief, every element of every claim of the '630 Patent was patented, described in a printed publication or a combination of printed publications, or in public

use, on sale, or otherwise available to the public before the effective filing date of the application that led to the '630 Patent.

74.     On information and belief, every element of every claim of the '630 Patent was patented, described in a printed publication or a combination of printed publications, or in public use, on sale, or otherwise available to the public more than a year before the effective filing date of the application that led to the '630 Patent.

75.     Every claim of the '630 Patent is directed to non-statutory subject matter.

76.     Every claim of the '630 Patent fails to point out and distinctly claim the invention.

77.     The '630 Patent does not enable a person having ordinary skill in the art to make and use the invention.

78.     Every claim of the '630 Patent is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.

## COUNT SEVEN
## ABUSE OF PROCESS

79.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

80.     AlphaCap has filed frivolous infringement actions and asserted and/or threatened to assert patents that AlphaCap knew were invalid, unenforceable, and not infringed, and asserted other baseless causes of action.

81.     The aforementioned actions were filed, and assertions and threats were made, without excuse or justification.

82.     AlphaCap abused the legal process in a perverse and illegitimate manner, not to protect any valid intellectual property rights, but to achieve a collateral objective by using the

legal process to force Gust to incur legal expense and to either pay a sizable settlement or risk damage to reputation and harm to relationships with customers and prospective customers.

83.     AlphaCap further abused the legal process by using the Asserted Patents purely as litigation weapons rather than as a means to practice the technology these patents purport to cover.

84.     AlphaCap further abused the legal process by attempting to extract a sizeable settlement before the full legal and precedential implications of the *Alice* and *FanFunded* decisions rendered the Asserted Patents overtly invalid.

85.     AlphaCap further abused the legal process by filing identical separate actions based on identical patents and practically identical factual allegations against similarly situated Crowdfunding Defendants with the intent to avoid the legal effects of the *FanFunded* decision.

86.     AlphaCap further abused the legal process by attempting to set a *de facto* precedent that would encourage all future entrants into the crowdfunding market to pay AlphaCap licensing fees to "practice" its invalid patents while avoiding a determination on the merits that would reveal the invalidity of those patents.

87.     AlphaCap's actions were intentional, willful, and malicious, and constitute abuse of process.

88.     Unless enjoined, AlphaCap will continue to make threats against Gust and all future entrants into the crowdfunding market through objectively baseless assertions that such crowdfunders are infringing invalid and unenforceable patents.

89.     By reason of the foregoing, Gust has been damaged in an amount to be proven at trial and is entitled to suitable injunctive relief.

15750450v.1

## COUNT EIGHT
## TORTIOUS INTERFERENCE WITH CONTRACT

90.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

91.     Upon information and belief, the patent infringement lawsuit brought by AlphaCap against Gust was frivolous, objectively baseless and sham lawsuits.

92.     Upon information and belief, AlphaCap knew the Asserted Patents it sought to enforce were invalid and/or unenforceable against companies merely because they were engaged in crowdfunding.

93.     AlphaCap knew of the frivolity of its suits because the U.S. Supreme Court in *Alice* found that abstract ideas like crowdfunding could not be rendered eligible for patent protection simply because the patent included claims that "merely require generic computer implementation."

94.     Following *FanFunded*, the law was further clarified insofar as a patentee could not retain a monopoly on the idea of crowdfunding implemented through a computer or Internet platform.

95.     Nevertheless, AlphaCap sued Gust and the Crowdfunding Defendants to extract as much value from them as possible before any court or the USPTO found AlphaCap's Asserted Patents invalid. AlphaCap filed such lawsuits with knowledge that those lawsuits were objectively baseless.

96.     Upon information and belief, AlphaCap had knowledge of Gust's existing business relationships and contracts and were aware that their actions and misconduct would cause damage to existing contractual relationships that Gust currently has with its customers with respect to crowdfunding activities.

15750450v.1

97.     AlphaCap acted without excuse or justification.

98.     AlphaCap's actions were intentional, willful, and malicious, and constitute tortious interference with contract.

99.     Unless enjoined, AlphaCap will continue to make baseless threats against Gust and other current and future crowdfunders of infringing invalid and unenforceable patents and other causes of action and cause significant harm to those businesses and existing contractual relationships.

100.    By reason of the foregoing, Gust has been damaged in an amount to be proven at trial and is entitled to suitable injunctive relief.

**COUNT NINE**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

101.    Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

102.    Upon information and belief, the patent infringement lawsuits brought by AlphaCap against Gust was frivolous, objectively baseless, and sham lawsuits.

103.    Upon information and belief, AlphaCap knew the Asserted Patents were invalid and/or unenforceable against companies merely because they were engaged in crowdfunding.

104.    AlphaCap knew of the frivolity of these suits because the U.S. Supreme Court in *Alice* found that abstract ideas like crowdfunding could not be rendered eligible for patent protection simply because the patent included claims that "merely require generic computer implementation."

105.    Following *FanFunded*, the law was further clarified insofar as a patentee could not retain a monopoly on the idea of crowdfunding implemented through a computer platform.

106.     Nevertheless, AlphaCap sued the Crowdfunding Defendants to extract as much value from them as possible before any court or the USPTO found AlphaCap's Asserted Patents invalid. AlphaCap filed such lawsuits with knowledge that those lawsuits were objectively baseless.

107.     AlphaCap knew their actions would cause severe damage to Gust's prospective business relationships relating to crowdfunding.

108.     AlphaCap acted without excuse or justification.

109.     AlphaCap's actions were intentional, willful, and malicious, and constitute tortious interference with prospective economic advantage.

110.     Unless enjoined, AlphaCap will continue to make baseless threats against Gust and other current and future crowdfunders of infringing invalid and unenforceable patents and other causes of action and cause significant harm to those businesses and to their relationships with potential customers for their products.

111.     By reason of the foregoing, Gust has been damaged in an amount to be proven at trial and is entitled to suitable injunctive relief.

## COUNT TEN
## VIOLATION OF SECTION 2 OF SHERMAN ACT

112.     Plaintiff realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth herein.

113.     The relevant upstream (technology) markets for the purposes of this litigation is the market for crowdfunding effectuated through the use of a computer that the Asserted Patents purport to cover. AlphaCap has enormous market power in this field because if successful in this

or any of the related cases, it will have the power to either extract illegitimate licensing revenues from every competitor in the industry or force that competitor out of the industry.

114.    AlphaCap retains even more market power due to the timing of this lawsuit prior to the implementation of the SEC regulations authorized under the JOBS Act that will authorize equity crowdfunding in the U.S. on a massive scale. The precedential effect of a successful infringement decision would corner the entire nascent equity crowdfunding market in AlphaCap's favor.

115.    Upon information and belief, allowing AlphaCap's lawsuits to proceed would significantly impede future but as yet unrealized competition in the equity crowdfunding space, as it will allow AlphaCap to collect rents from every company attempting to enter the Internet crowdfunding space.

116.    There are barriers to entry into the downstream product market defined above, including, but not limited to, the royalties AlphaCap would charge to enter the Internet crowdfunding downstream market and AlphaCap's ability to exclude any competitor they wish from the downstream Internet crowdfunding market.

117.    The relevant geographic market for the purposes of this litigation is the entire United States.

118.    The Texas Actions are objectively baseless; the U.S. Supreme Court in *Alice* completely obliterated any non-frivolous basis to assert patent rights over longstanding financial techniques merely because they were implemented through a computer. This court's ruling in *FanFunded* further supports this position. No reasonable litigant would persist in litigation after so many indications that the litigation was objectively baseless.

119.     AlphaCap's institution of objectively baseless litigation and continuation of that same litigation against Gust and the remaining Crowdfunding Defendants has the ability to cause severe injury not only to Gust but to the entire nascent equity crowdfunding industry, thereby frustrating Congress' intent in passing the JOBS Act by limiting the availability of the crowdfunding activities that could promote job growth.

120.     The actions of AlphaCap described above were intentional, willful and malicious, and constitute a violation of Section 2 of the Sherman Act.

121.     Unless enjoined, AlphaCap will continue to damage Gust's ability to compete in the markets in the United States for crowdfunding.

122.     By reason of the foregoing, Gust has been damaged in an amount to be proven at trial and are entitled to suitable injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Gust prays for the entry of judgment:

a.     Declaring that each claim of the United States Patent No. 7,848,976 is invalid and/or unenforceable.

b.     Declaring that each claim of the United States Patent No. 7,908,208 is invalid and/or unenforceable.

c.     Declaring that each claim of the United States Patent No. 8,433,630 is invalid and/or unenforceable.

d.     An injunction prohibiting AlphaCap and their officers, agents, employees and attorneys, and all those persons in active concert or participation with them, from alleging infringement of the '976, '208, and '630 Patents; and

e.     Compensatory damages in the amount to be determined at trial;

f.     Statutory damages pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) equal to three times the damages actually sustained by the Crowdfunding Defendants, in an amount to be proven at trial; and

g.     Punitive damages based on AlphaCap's willful and malicious conduct; and

-21-

h.      A declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and awarding Gust its reasonable attorneys' fees, expenses and costs incurred in this action and the Texas Action; and

i.      Awarding Gust such other relief as may be properly awarded by this court.

**JURY DEMAND**

Plaintiff respectfully requests a jury on all issues presented in this matter.


Dated:  August 6, 2015


By:      /s/ Samuel Van Eichner_____
        Frank Bruno
        Samuel Van Eichner
        WHITE AND WILLIAMS LLP
        One Penn Plaza
        250 W. 34th Street, Suite 4110
        New York, New York 10119-4115
        (215) 864-6225 (P)
        (215) 789-7568 (F)
        brunof@whiteandwilliams.com
        eichners@whiteandwilliams.com

15750450v.1