```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
GUST, INC.,                            :
                                       :
                    Plaintiff,         :         15cv6192 (DLC)
                                       :
          -v-                          :
                                       :
ALPHACAP VENTURES, LLC and RICHARD     :
JUAREZ,                                :         OPINION & ORDER
                                       :
                    Defendants.        :
                                       :
-------------------------------------- :
                                       :
ALPHACAP VENTURES, LLC,                :
                                       :
                    Plaintiff,         :         16cv1784 (DLC)
                                       :
          -v-                          :
                                       :
GUST, INC.,                            :
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X
```

APPEARANCES:

For AlphaCap Ventures, LLC and Richard Juarez:
Marie A. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111

For Gust, Inc.:
Frank A. Bruno
White and Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103

DENISE COTE, District Judge:

For eighteen months, AlphaCap Ventures LLC ("AlphaCap") pursued this patent infringement litigation against Gust, Inc. ("Gust"), first in the Eastern District of Texas, and then in the Southern District of New York following the transfer of the Texas action. As AlphaCap recognized, its patent claims were "not worth pursuing" in light of the Supreme Court's decision in Alice Corporation Pty. Ltd. v. CLS Bank International, 134 S. Ct. 2347 (2014). Accordingly, as Gust prepared a motion challenging the validity of the patents, AlphaCap provided Gust with a covenant not to sue.

Gust now seeks an award of attorneys' fees and costs from AlphaCap and its principal, Richard Juarez ("Juarez"), on the ground that this case is exceptional under 35 U.S.C. § 285 ("Section 285"). Gust also seeks to hold AlphaCap's attorneys jointly liable under 28 U.S.C. § 1927 ("Section 1927"). For the following reasons, Gust's motion is granted in part.

## BACKGROUND

Gust is a Delaware corporation that participates in the internet crowdfunding market. AlphaCap is a California patent-holding non-practicing entity that instigates patent infringement lawsuits. This request for fees arises out of a 2015 lawsuit brought by AlphaCap against Gust alleging

infringement of three method patents[1] that claim computer-implemented methods of managing information related to "financing" and "equity and debt financing," and that provide related "data collection templates" (the "AlphaCap Patents").[2] These patents purport to cover computer programs that allow investors to search for startup companies that are seeking investors.  Because multiple investors may invest in a single startup using these programs, such programs have come to be known as "crowdfunding."

## I.    AlphaCap Files Ten Lawsuits in the Eastern District of Texas.

On June 19, 2014, the Supreme Court issued <u>Alice</u>, which held that three patents were too abstract to be patentable.  The patents claimed (1) a "method for exchanging [financial] obligations," (2) "a computer system configured to carry out the method for exchanging obligations," and (3) "a computer-readable medium containing program code for performing the method of exchanging obligations."  <u>Alice</u>, 134 S. Ct. at 2353.  In

---

[1] A method patent covers a "process, art or method, and [may] include[] a new use of a known process, machine, manufacture, composition of matter, or material."  35 U.S.C. § 100.  Method patents may cover "an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing."  <u>Bilski v. Kappos</u>, 561 U.S. 593, 604 (2010) (citation omitted).

[2] The AlphaCap Patents are U.S. Patent Nos. 7,848,976, 7,908,208, and 8,433,630.

invalidating these patents, the Court elaborated on the long held rule that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Id. at 2354 (citation omitted).  Accordingly, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.  Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility."  Id. at 2358 (citation omitted).

On January 23, 2015, despite knowledge of the Alice decision and its implications for the AlphaCap Patents, AlphaCap initiated ten actions in the Eastern District of Texas alleging three counts of patent infringement against every major entity that provides internet crowdfunding services.  These ten actions were pursued on a contingency fee basis by its counsel.  By June 23, AlphaCap had settled each action it filed in the Eastern District of Texas except for the action against Gust.  None of the settlements exceeded $50,000 and some settlements were for substantially less money.[3]  Gust answered on March 26 with six counterclaims, seeking a declaratory judgment of non-

---

[3] AlphaCap's principal Juarez works as an investment banker. Juarez asserts that he decided to settle the lawsuits quickly because his employer "insinuated" in February of 2015 that he would be fired if he continued to enforce the AlphaCap Patents through litigation.  Juarez remains employed by his investment bank.

infringement and invalidity for each of the three AlphaCap Patents.

On June 19, 2015, AlphaCap's counsel called Gust's attorney to present AlphaCap's opening demand to settle the Texas Action. Gust rejected the demand.  On June 22, Gust filed a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404 or, in the alternative, 28 U.S.C. § 1406.

On June 29, 2015, the Honorable Katherine Failla issued her decision in Kickstarter, Inc. v. Fan Funded, LLC, 11cv6909 (KPF), 2015 WL 3947178 (S.D.N.Y. June 29, 2015).  Kickstarter applied Alice to patent claims directed to the concept of "crowd-funding or fan-funding, i.e., raising funds for a project from interested individuals in exchange for incentives."  Id. at *11.  Kickstarter held that the cloaking of the otherwise abstract idea of crowdfunding in "the guise of a computer-implemented claim" does not make the idea patent-eligible.  Id. at *13 (citation omitted).

## II.  July 2015: AlphaCap Offers to Walk Away from the Texas Action.

On July 2, 2015, counsel for AlphaCap contacted Gust's counsel and stated that this case was "not worth litigating." AlphaCap's counsel offered a "walkaway" deal whereby AlphaCap would dismiss its claims with prejudice and the parties would go their separate ways.  Gust rejected this offer, explaining that

Gust would not agree to settle unless and until AlphaCap assigned the AlphaCap Patents to Gust.

The same day, AlphaCap filed a motion for discovery with respect to Gust's motion to transfer venue.  This motion for discovery was granted on July 6.  AlphaCap was given leave to serve interrogatories and requests for production, and to conduct Rule 30(b)(6) depositions.  After nearly two months of venue discovery, AlphaCap filed an opposition to Gust's motion on September 1.  AlphaCap later filed a sur-reply on September 21.

As the parties were undergoing venue discovery, counsel for Gust sent AlphaCap a formal, written offer of settlement on July 9.[4]  The terms of the offer, which were stated to remain open until July 31, 2015, were as follows: Gust would consent to AlphaCap's dismissal of the case with prejudice and Gust would voluntarily dismiss its counterclaims if AlphaCap either: (1) agreed to pay Gust's attorneys' fees; or (2) assigned full ownership in all of the AlphaCap Patents to Gust so that Gust could prevent the AlphaCap Patents from being used again for frivolous litigation.  Under the terms of this settlement offer, AlphaCap would retain the proceeds of any license agreements under the AlphaCap Patents into which it had already entered.

---

[4] AlphaCap's counsel had refused to communicate Gust's prior settlement position to Juarez since it was not in writing.

The July 9 letter explained in detail the reasons Gust believed
that the AlphaCap Patents were "invalid under Section 101 in
view of Alice," and that AlphaCap's infringement contentions
were deficient.  The letter threatened to seek attorneys' fees
from AlphaCap and its counsel pursuant to § 285 and Rule 11,
Fed. R. Civ. P.  On July 28, counsel for AlphaCap again
suggested a walkaway settlement, but counsel for Gust refused.

**III. Gust Files New York Action.**

The July 9 settlement offer having been rejected, Gust
filed an action against AlphaCap in the Southern District of New
York on August 6, 2015 (the "New York Action").  The New York
Action sought a declaratory judgment of non-infringement and
invalidity of the AlphaCap Patents.  The New York Action also
alleged abuse of process, tortious interference with contract,
tortious interference with prospective economic advantage, and
attempted monopolization under § 2 of the Sherman Act and state
law claims.

On August 12, counsel for AlphaCap contacted counsel for
Gust seeking details regarding Gust's settlement offer.  On
August 17, Gust sent AlphaCap a revised settlement offer.
Gust's new settlement offer provided that Gust would settle the
Texas and New York Actions in exchange for AlphaCap paying all
of Gust's attorneys' fees and costs to date (which then amounted

to approximately $175,000) <u>and</u> assigning ownership of the
AlphaCap Patents to Gust.

On August 24, counsel for AlphaCap sent a letter to counsel
for Gust threatening to move for sanctions under Rule 11 unless
Gust dismissed its New York Action by September 17, 2015.  On
November 6, AlphaCap moved for sanctions pursuant to Fed. R.
Civ. P. 11,[5] and filed a motion to dismiss all claims against it
in the New York Action pursuant to Fed. R. Civ. P. 12(b)(6) (the
"November 6 Motion").[6]

**IV.  Transfer of Texas Action to New York**

Despite counsel for AlphaCap's July 2 acknowledgement that
this case was "not worth litigating" and the parties' extensive
settlement discussions thereafter, the parties proceeded to
engage in claim construction discovery in the Texas Action from
August 2015 to February 2016.  Gust produced over 30,000 pages
of discovery in response to two rounds of document requests
propounded by AlphaCap.[7]

---

[5] AlphaCap's Rule 11 motion was denied by this Court on July 28,
2016.

[6] In accordance with Fed. R. Civ. P. 15(a)(1)(B), Gust filed an
Amended Complaint on November 27, 2015 adding Juarez, AlphaCap's
sole director and officer, as a defendant, and replacing the
tortious interference claims with a claim of patent misuse.  The
parties were given leave to file sur-replies to the pending
motions to dismiss after the Amended Complaint was filed.

[7] On October 27, 2015, Gust filed a motion in the Texas Action to
compel interrogatory responses from AlphaCap, which AlphaCap

On March 2, 2016, the Texas Action was transferred to this District.  The Honorable Ronnie Abrams, who was then presiding over the New York Action, consolidated the two cases on April 28.  An April 28 Order required the parties to file status reports by May 20 describing inter alia the status of discovery and contemplated motions.  Both actions were transferred to this Court on May 13, 2016.  A conference date of June 10 was set.

On May 18, AlphaCap provided Gust with a covenant not to sue it for infringement of the AlphaCap Patents (the "Covenant").  In the May 20 report to the Court, AlphaCap took the position that the Covenant required dismissal of all of its infringement claims and Gust's counterclaims seeking a declaratory judgment of non-infringement and invalidity.  In that same report, Gust announced that it would still seek to show that the AlphaCap Patents were invalid to support its remaining claims and to obtain an award of fees under § 285.  Relying on its Covenant, AlphaCap filed a second motion to dismiss on May 25 (the "May 25 Motion").  The May 25 Motion sought: (1) to voluntarily dismiss its own patent infringement claims against Gust with prejudice in the Texas Action pursuant to Fed. R. Civ. P. 41(a)(2); and (2) to dismiss Gust's invalidity and non-infringement counterclaims and claims in both

---

opposed.  This case was transferred from the Eastern District of Texas without a ruling on Gust's motion to compel.

the Texas and the New York Actions for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

At the conference of June 10, AlphaCap continued to assert that it was unnecessary to address the validity of the AlphaCap Patents in light of the Covenant.  Gust continued to assert that the validity determination remained relevant.

On July 28, this Court issued an Opinion granting AlphaCap's November 6 and May 25 motions to dismiss (the "July 28 Opinion").  See Gust, Inc. v. AlphaCap Ventures, LLC, 15cv6192 (DLC), 2016 WL 4098544 (S.D.N.Y. July 28, 2016).  In the July 28 Opinion, the Court observed that AlphaCap had initiated the Texas Action despite knowing that the decision in Alice "rendered [AlphaCap's] patents invalid." Id. at *2.  With respect to the May 25 Motion, the Court held that the Covenant rendered moot the claims and counterclaims related to the infringement and validity of the AlphaCap Patents.  Id. at *3. The Court noted that the parties were in agreement that the Covenant did not affect Gust's requests for attorney's fees and costs pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927.  Id. at *3-*4.  The Court next addressed the November 6 Motion.  It dismissed Gust's claims of patent misuse and abuse of process, but gave Gust leave to amend its Sherman Act claim.  Id. at *4-*6.  An amended Sherman Act claim was never filed.

Gust moved for attorneys' fees and costs under 35 U.S.C. § 285 and 28 U.S.C. § 1927 on August 19.  The motion became fully submitted on September 16.  Gust's final request is for $605,626 in fees and $15,923 in costs, totaling $621,549.

<u>**DISCUSSION**</u>

**I.   Section 285**

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S. Ct. 1749, 1756 (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  <u>Id.</u>  In making this determination, district courts may consider a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  <u>Id.</u> at 1756 n.6 (citation omitted).  The movant need only establish "exceptional circumstances" under § 285 by a "preponderance of the evidence."

Id. at 1758.  Finally, as the Federal Circuit has clarified, "it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position.  A party's position on issues of law ultimately need not be correct for them to not 'stand[] out,' or be found reasonable." SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing Octane Fitness, 134 S. Ct. at 1756).

**A. Prevailing Party**

In order to qualify for attorneys' fees, the party seeking such fees must be a "prevailing party."  35 U.S.C. § 285.  "[T]o be a prevailing party, one must receive at least some relief on the merits, which alters the legal relationship of the parties." Inland Steel Co. v. LTV Steel Co., 364 F.3d 1318, 1320 (Fed. Cir. 2004) (citation omitted).

> [A]s a matter of patent law, the dismissal [of claims] with prejudice, based on the covenant [not to sue] and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [a party's] fee claim under 35 U.S.C. § 285.

Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1035 (Fed. Cir. 2006).

The dismissal of AlphaCap's patent infringement claims with prejudice has the necessary "judicial imprimatur" to constitute

a judicially sanctioned change in the legal relationship of the parties, such that this Court can properly entertain Gust's fee claim under 35 U.S.C. § 285.  This conclusion is not altered by the dismissal of the Gust state law and Sherman Act claims.  "A party does not need to prevail on all claims to qualify as the prevailing party."  SSL Servs., LLC v. Citrix Sys., Inc., 769 F.3d 1073, 1086 (Fed. Cir. 2014).

### B. Exceptionality

This case is "exceptional" under the totality of the circumstances test articulated in Octane Fitness.  First, AlphaCap's lawsuit against Gust was "frivolous" and "objectively unreasonable" in light of Alice and its progeny.  Second, the manner in which AlphaCap litigated its claim was unreasonable, insofar as AlphaCap's goal was to extract a nuisance settlement from Gust.  Finally, awarding attorneys' fees in this case will deter litigation misconduct.

### 1. AlphaCap's Lawsuit Against Gust was Frivolous and Objectively Unreasonable.

"To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits."  Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citation omitted).  Alice and its holding that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract

idea into a patent-eligible invention," gave AlphaCap clear
notice that the AlphaCap Patents could not survive scrutiny
under 35 U.S.C. § 101.  <u>Alice</u>, 134 S. Ct. at 2358.  It follows
that no litigant could have a reasonable expectation of success
on the merits in AlphaCap's patent infringement lawsuit against
Gust.

>   a. The Claims of the AlphaCap Patents Are Directed
>      Toward a Patent-Ineligible Abstract Idea.

Section 101 provides that a patent may be obtained for "any
new and useful process, machine, manufacture, or composition of
matter, or any new and useful improvement thereof."  35 U.S.C. §
101.  It is well-established that laws of nature, natural
phenomena, and abstract ideas are not patentable under § 101.
<u>Alice</u>, 134 S. Ct. at 2354.  The Supreme Court has promulgated a
two-step "framework for distinguishing patents that claim laws
of nature, natural phenomena, and abstract ideas from those that
claim patent-eligible applications of those concepts."  <u>Id.</u> at
2355.  First, courts must "determine whether the claims at issue
are directed to . . . [a] patent-ineligible concept[]."  <u>Id.</u>  If
not, the inquiry ends, as the claims are patent eligible.  If
the claims are directed to a patent-ineligible concept, the
courts must then look for an "inventive concept," -- "<u>i.e.</u>, an
element or combination of elements that is sufficient to ensure
that the patent in practice amounts to significantly more than a

patent upon the ineligible concept itself." Id. (citation omitted).

As the Federal Circuit recently observed, "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016). Crowdfunding is one such abstract, fundamental economic arrangement. As Kickstarter explained, crowdfunding is "squarely about patronage -- a concept that is 'beyond question of ancient lineage' . . . and incontestably similar to other 'fundamental economic concepts,' and to other types of 'organizing human activity,' both of which have been found to be abstract ideas by the Supreme Court and the Federal Circuit." Kickstarter, 2015 WL 3947178, at *11 (citing Alice, 134 S. Ct. at 2357 (invalidating claims directed to intermediated settlement); Bilski, 561 U.S. at 611 (risk hedging); OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (offer-based price optimization); buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) (transaction performance guaranty); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) (a method of using advertising as an exchange or currency); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (data collection, recognition, and storage); Accenture

15

Glob. Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1344-46 (Fed. Cir. 2013) (generating tasks in an insurance organization)).

In one of the Federal Circuit's most recent applications of Alice, the court found claims directed to the idea of "anonymous loan shopping" to be abstract.  Mortgage Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1324 (Fed. Cir. 2016).  Comparing those claims to the claims at issue here,[8] it's clear that the use of customizable profiles to facilitate patronage is an abstract, patent-ineligible idea.  The Mortgage Grader patents recite "a method for a borrower to evaluate and/or obtain financing."  Id. at 1318.  The asserted claims outline the following steps:

> [B]orrower applies for a loan, a third party
> calculates the borrower's credit grading, lenders
> provide loan pricing information to the third party
> based on the borrower's credit grading, and only
> thereafter (at the election of the borrower) the
> borrower discloses its identity to a lender . . . .

---

[8] In Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 2015-1180, 2016 WL 6440387, at *4 (Fed. Cir. Nov. 1, 2016), the Federal Circuit noted that instead of relying on a precise definition of or test for what an "abstract idea" encompasses, "the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen -- what prior cases were about, and which way they were decided."  As just described, since at least 2013, the Federal Circuit has invalidated patents addressed to abstract ideas similar to those asserted in the AlphaCap Patents based on a § 101 analysis.

Id. at 1324.  As the Federal Circuit concluded, these steps "could all be performed by humans without a computer," and are therefore directed to an abstract idea.  Id.

Similarly, the AlphaCap Patents recite a series of steps for storing and organizing investment data that could all be performed by humans without a computer.  For example, Claim 1 of the '976 Patent recites the following steps:

A method of managing resource consumer information, comprising the steps of:

a system of one or more machines providing to a resource provider, a first set of one or more resource-provider-input-regions within a user interface, where processing input received in the first set of one or more resource-provider-input-regions, causes the system to define requirements of, and to name, at least one profile group;

the system providing to the resource provider, a second set of one or more resource-provider-input-regions within a user interface, where processing input received in the second set of one or more resource-provider-input-regions causes the system to define a data collection template of fields for a semi-homogenous profile of desired resource consumer information according to requirements of a selected profile group, data collection templates of fields of different semi-homogeneous profiles need not be uniform for all semi-homogeneous profiles;

the system providing to at least one user, by a computer, a telephone or a Personal Digital Assistant, one or more user fields within a user interface in which the user may input information into the user fields;

storing the information as a semi-homogenous profile record in an electronic database system;

the system providing the resource provider, by a
computer, a third set of one or more resource-
provider-input-regions within a user interface where
processing input received in the third set of one or
more resource-provider-input-regions causes the system
to associate the profile record with the selected
profile group; and

the system providing to at least one authorized party,
one or more authorized-party-input regions within a
user interface, where processing input received in the
one or more authorized-party-input regions causes the
system to access information stored in the system and
associated with a selected profile group.

In effect, this claim describes an indexing system for
investment portfolio records, which is used to facilitate
crowdfunding.  The Summary of the '076 Patent further reinforces
the abstract nature of this claim:

A method of using an electronic database system for
collecting resource consumer information, organizing
the information into standardized profiles and
managing the profiles, to enable accessing the
information as desired, comprises the steps of:
defining a data collection template of fields for a
standardized profile or resource consumer information
desired by a resource provider; allowing at least one
user to input information into the fields; storing the
information as a profile in an electronic database
system; and allowing at least one authorized party to
access information stored in the system.

The concept of investing (or, in the case of Mortgage
Grader, extending a loan) based on certain criteria is long
prevalent in our financial system.  That the AlphaCap Patents
employ an electronic database system to coordinate, monitor, and
update information useful to investment decisions is of no

18

consequence, and does not make the asserted claims any less abstract.

AlphaCap argues that the asserted claims are not abstract for purposes of § 101 because they are directed toward improvements in computer-related technology.  See Alice, 134 S. Ct. at 2358-59 (suggesting that claims that "purport to improve the functioning of the computer itself" or "improve[] an existing technological process" might not succumb to the abstract idea exception); see also Enfish, 822 F.3d at 1335 ("We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and necessarily analyzed at the second step of Alice, nor do we believe that Alice so directs.").  The only support AlphaCap offers for this bald assertion is that the claimed concepts -- "data collection templates," "semi-homogenous profiles," "webpages," and "electronic database systems" -- promote the "efficient electronic gathering of data via a computer for a database system."[9]  But these computer functions -- namely, data collection, classification, recognition, and storage -- are "well-understood, routine, conventional activities previously

_____

[9] AlphaCap's defense against the § 101 challenge to its patents is perfunctory.  Its single argument is addressed to both prongs of the Alice analysis.

known to the industry." Alice, 134 S. Ct. at 2359 (citation omitted); see also Amdocs, 2016 WL 6440387, at *6 ("[D]ata collection, recognition, and storage [a]re undisputedly well-known." (citation omitted)).

The claims here are not like those found patent eligible in Enfish.  In Enfish, the asserted claims were directed to a self-referential database, which the Federal Circuit described as functioning "differently than conventional database structures." Enfish, 822 F.3d at 1337.  For example, the self-referential database eliminates the requirement that a programmer preconfigure a structure to which the user must adapt data entry and achieves "benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."  Id.  The claims here, by contrast, do not purport to enhance the speed or otherwise improve upon the well-known data collection and classification functions of the computer.  While the claimed method purports to accelerate the process of collecting, classifying, and storing user information, "the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."  FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1095 (Fed. Cir. 2016).

b. The Asserted Claims Do Not Contain an "Inventive
Concept" Sufficient to Transform the Claimed Abstract
Idea into a Patent-Eligible Application.

The implementation of economic arrangements using "generic
computer technology" does not constitute an "inventive concept"
so as to render an otherwise abstract idea patent-eligible.  See
Mortgage Grader, 811 F.3d at 1322.  Here, the asserted claims
involve the implementation of a well-established economic
arrangement -- crowdfunding -- through generic computer
technologies such as a processor; a device such as a computer,
telephone, or personal digital assistant; and an electronic
database.  These generic computer implementations do not
constitute "inventive concepts" for purposes of Alice.

AlphaCap attempts to masquerade its otherwise abstract idea
by highlighting allegedly "inventive" elements of the AlphaCap
Patents, such as "data collection templates," "semi-homogenous
profiles," and "webpages of user-fillable fields."  But these
generic computer elements do not confer patent eligibility.  As
explained in Intellectual Ventures I LLC v. Capital One Bank
(USA), 792 F.3d 1363 (Fed. Cir. 2015), which upheld a finding of
patent ineligibility, claims that

consist of nothing more than the entry of data into a
computer database, the breakdown and organization of
that entered data according to some criteria, and the
transmission of information derived from that entered
data to a computer user, all through the use of
conventional computer components, such as a database
and processors, operating in a conventional manner

21

do not confer patent eligibility.  Id. at 1371 (citation omitted).  Nor does the fact that crowdfunding can be accomplished through other, non-infringing means (such as by using a completely homogeneous profile) render the AlphaCap Patents valid under § 101.  See, e.g., Bilski, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable."); OIP Techs., 788 F.3d at 1362-63 ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.").  In sum, the asserted claims in the AlphaCap Patents are directed to the patent-ineligible abstract idea of crowdfunding, and do not contain an inventive concept sufficient to transform the abstract idea of crowdfunding into a patent-eligible application.

### 2. AlphaCap's Motivation in Pursuing This Lawsuit Against Gust Was Inappropriate.

The "motivation" prong of the Octane Fitness test counsels further in favor of a finding of an exceptional case. AlphaCap's motivation in this litigation was not to secure a reasonable royalty for infringement of a valid patent, but rather to extract a nuisance settlement from Gust on the theory that Gust would rather pay an unjustified albeit minimal license fee than bear the costs of the threatened expensive litigation

in a distant venue.  AlphaCap's comparatively paltry settlements
with the nine other defendants confirms its unsavory motivation.
Settlement agreements were obtained with the nine other
defendants within six months of filing lawsuits against them,
and the settlement amounts do not bear any relationship to
reasonable royalties.  Finally, AlphaCap's decision to file this
case in the Eastern District of Texas -- a venue that bears no
relationship to the parties or facts at issue in this case, as
discussed in more detail below -- further supports a finding of
inappropriate motivation.  See Oplus Techs., Ltd. v. Vizio,
Inc., 782 F.3d 1371, 1372 (Fed. Cir. 2015) (finding litigation
misconduct where the plaintiff "strategically amend[ed] its
claims to manufacture venue" in a district that had "only the
most tenuous basis in its initial complaint for bringing suit"
in that venue).

### 3. Granting Gust's Motion for Attorneys' Fees Will Deter Abusive Litigation Conduct.

The "deterrence" prong of the Octane Fitness test also
weighs in favor of an exceptional case finding.  The boilerplate
nature of AlphaCap's complaint, the apparent absence of any
reasonable pre-suit investigation,[10] and the number of
substantially similar lawsuits filed within a short time frame,

---

[10] In opposition to this motion, AlphaCap has not identified any
pre-suit investigation which would justify the filing of this
litigation.

suggest that AlphaCap's instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation when faced with even frivolous patent lawsuits.  Given AlphaCap's refusal to acknowledge the invalidity of its patents, an award of attorneys' fees in this case will deter any future frivolous lawsuits asserting infringement of the AlphaCap Patents against corporations that host crowdfunding platforms.

### 4. Gust's Failure to Obtain a Merits Ruling on the Invalidity of the AlphaCap Patents Does Not Undermine a Finding of Exceptionality Under Section 285.

AlphaCap argues that Gust's failure to file an early motion to dismiss based on the invalidity of the AlphaCap Patents proves that AlphaCap's position was not so meritless as to meet the standards for "exceptionality" under Octane Fitness.  To the extent AlphaCap is arguing that Gust's failure to obtain an early dismissal of the claims evidences Gust's belief that the AlphaCap Patents were potentially valid, the procedural history of this case points to the contrary.  From the time Gust included counterclaims with its answer in the Texas Action, AlphaCap was on notice that Gust wished to litigate the validity of the AlphaCap Patents.  From at least July 2015, AlphaCap was also on notice that Gust believed that the Supreme Court's decision in Alice confirmed that the AlphaCap Patents could not

survive a § 101 challenge and that Gust would be seeking attorneys' fees under § 285.  Gust never wavered in that regard or gave AlphaCap reason to doubt that its intentions remained unchanged.

Indeed, Gust sought to obtain a merits ruling on the invalidity of the AlphaCap Patents even after AlphaCap filed the Covenant.  As AlphaCap knew, Gust was preparing its § 101 motion as early as May of this year.  AlphaCap issued the Covenant to prevent Gust from filing that motion, and Gust resisted that outcome.  In its memorandum on May 20 to the Court, Gust requested that the parties be allowed to complete fact discovery regarding the invalidity claims, explaining that

> [a] decision on the validity of the Asserted Patents will be required even in the event AlphaCap attempts to dismiss its affirmative patent infringement claims, as Gust's abuse of process, Sherman Act antitrust, and 35 U.S.C. § 285 claims involve a showing that AlphaCap's infringement case was "objectively baseless," which may be proved at least in part by this Court finding the Asserted Patents invalid.

Again at a June 10 conference, Gust's attorney reserved his right to present evidence concerning the invalidity of the AlphaCap Patents.  AlphaCap's counsel, however, sought to curtail further discovery on, amongst other issues, § 101 invalidity, by having the Court decide AlphaCap's Rule 12(b)(6) motion to dismiss first:

> Why not just have [Gust] bring their fee motion and you can resolve that because what they've asked for is

open discovery . . . .  And if they're talking about,
we just want to [have] our attorney['] s fees paid for,
going forward on these claims is only going to make
them increase their attorney's fees and I think none
of these claims should go forward and maybe your Honor
can consider the 12(b)(6) motion first and realize
that all these claims should be dismissed.

In sum, Gust consistently contested the validity of the

AlphaCap Patents, through both its counterclaims in the Texas

Action and its affirmative claims in its complaint in the New

York Action.  That AlphaCap was able to thwart Gust's efforts --

after the Texas and New York Actions were consolidated -- to

obtain a formal declaration of invalidity does not prove the

potential validity of the AlphaCap Patents, nor does it disprove

the exceptionality of this case under § 285.

## II.  Individual Liability of Richard Juarez

"[A]n individual may be assessed fees under § 285 if his

conduct supports a finding that the case is exceptional."

Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 475 (Fed.

Cir. 1985).  For example, a corporate officer may be held

personally liable under § 285 when the officer actively

participates in the filing and continued litigation of a bad

faith lawsuit.  See Hughes v. Novi Am. Inc., 724 F.2d 122, 126

(Fed. Cir. 1984).

Juarez was added as a defendant to this action on November

27, 2015.  The Amended Complaint asserts claims of abuse of

process, patent misuse, and a Sherman Act violation against

26

Juarez.  There is insufficient evidence in this case to support a personal assessment of fees against Juarez under § 285.  Gust does not allege that Juarez engaged in tortious conduct in connection with this lawsuit after it was filed.  Nor do the parties provide any evidence that Juarez directed the course of litigation in this case.  Rather, Gust maintains that it was AlphaCap's attorneys who insisted on engaging in frivolous proceedings despite Juarez's desire to promptly settle the Eastern District of Texas lawsuits.

Gust asserts in the alternative that Juarez is AlphaCap's alter ego such that AlphaCap's corporate veil should be pierced to hold Juarez individually liable for Gust's attorneys' fees. The parties have not briefed in any detail what law governs the alter ego analysis here.  In its reply brief, Gust assumes that New York law applies.[11]  This Court disagrees and finds that California law governs the alter ego analysis.

The Federal Circuit has held that "the alter ego issue is not unique to patent law," and therefore "the law of the regional circuit" should be applied.  Insituform Techs., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1380 (Fed. Cir. 2004). Second Circuit law provides that the forum state's choice of law

---

[11] AlphaCap did not address the issue of alter ego liability in its opposition brief, even though Gust's memorandum of law in support of its motion calls for an order requiring Juarez (amongst others) to pay Gust's fees and costs.

principles determine the state law to be applied to an alter ego claim.  See Kalb, Voorhis & Co v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993).  Under New York choice of law principles, "[t]he law of the state of incorporation determines when the corporate form" will be pierced.  Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted).

AlphaCap is a California limited liability company.  Under California law, alter ego liability may be imposed where two conditions are satisfied.  The first condition assesses whether "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased."  In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (citation omitted).  The second condition analyzes whether "adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice."  Id. (citation omitted).  Factors suggesting an alter ego relationship include: (1) commingling of funds and other assets and failure to segregate funds of the separate entities; (2) the treatment by an individual of the assets of the corporation as his own; (3) the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and (4) the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of

assets between entities so as to concentrate the assets in one and the liabilities in another.  See id.

There is insufficient evidence to find that AlphaCap is Juarez's alter ego.  Gust's argument to the contrary is unavailing.  Gust highlights the fact that Juarez caused AlphaCap to settle its nine other lawsuits in the Eastern District of Texas solely for the purpose of safeguarding his employment.  This fact, according to Gust, evidences Juarez's complete domination over AlphaCap.  But this factor, standing alone, does not establish that AlphaCap has ceased to exist as a separate entity, or that there has been any abuse of the corporate form.  Moreover, the Supreme Court has cautioned that "where patents are concerned, the one-person corporation may be an altogether appropriate means to permit innovation without exposing inventors to possibly ruinous consequences."  Nelson v. Adams USA, Inc., 120 S. Ct. 1579, 1587 (2000). Accordingly, Juarez is not jointly liable for Gust's attorneys' fees under § 285.

**III. Section 1927**

Gust also seeks an award of attorneys' fees against AlphaCap's counsel, the patent litigation law firm of Gutride Safier LLP, who pursued this litigation on a contingency fee basis.  That motion is granted.

Under 28 U.S.C. § 1927,

> [a]ny attorney or other person admitted to conduct
> cases in any court of the United States . . . who so
> multiplies the proceedings in any case unreasonably
> and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such
> conduct.

Section 1927 only applies to attorneys or those authorized to practice before the courts.  Enmon v. Prospect Capital Corp., 675 F.3d 138, 144 (2d Cir. 2012).  An award of attorneys' fees under § 1927 is only appropriate "when there is a finding of conduct constituting or akin to bad faith."  Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016) (citation omitted).  To constitute bad faith, "[t]he attorney's actions must be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  Id. (citation omitted).

As experienced patent counsel, AlphaCap's attorneys were well aware of Alice and its implications for the AlphaCap Patents.  Realizing that they could not defend the AlphaCap Patents against a § 101 validity challenge, they chose nonetheless to file this contingency-fee lawsuit,[12] as one of ten

---

[12] Contingency fee arrangements can provide critical access to the courts and benefit many individuals and entities without the means to pursue their claims.  The reference to AlphaCap's contingency fee arrangement with Gutride Safier is relevant here only insofar as it sheds light on the § 1927 inquiry.  In opposing this § 1927 motion, AlphaCap's counsel does not suggest

in the Eastern District of Texas, in the expectation that they could obtain quick settlements of relatively modest amounts from every major firm in the internet crowdfunding arena.  When Gust resisted, counsel immediately acknowledged that AlphaCap's claims were "not worth litigating" and offered to dismiss the Texas Action with prejudice.  When Gust resisted this offer as well, and insisted that it be paid its counsel fees to date, AlphaCap and its counsel chose to litigate for another year. They resisted a motion to change venue, twice demanded documents from Gust, and engaged in the prosecution of the Texas Action. Only in May 2016, after the Texas Action was consolidated with the New York Action and as Gust prepared its § 101 motion, did AlphaCap serve the Covenant.  Thereafter, AlphaCap argued repeatedly to the Court that the existence of the Covenant meant that the Court did not need to reach the issue of the validity of the AlphaCap Patents.

Two of these activities are discussed in more detail here. First, AlphaCap opposed Gust's motion to transfer venue, even though there was no nexus between the Eastern District of Texas (where this case was originally filed) and any party or fact relevant to the case.  Second, AlphaCap insisted on proceeding

---

that Juarez was responsible after February 2015 for any of the decisions that were made in how this litigation was prosecuted.

with costly litigation of its infringement claims despite its
unwillingness ultimately to defend the AlphaCap Patents.

### A. AlphaCap's Attorneys Did Not Have a Good Faith Basis to Oppose Gust's Motion to Transfer Venue.

AlphaCap began this litigation by filing its lawsuit in the
Eastern District of Texas.  AlphaCap has never identified any
valid basis for that choice of venue.  Its client resides in
California and is a California limited liability company.  The
defendant is a Delaware corporation with a New York office.  On
June 22, 2105, Gust filed a motion to transfer venue pursuant to
28 U.S.C. § 1404[13] or, in the alternative, 28 U.S.C. § 1406.[14]
Under Fifth Circuit law, the party seeking transfer under § 1404
must show "good cause" for the transfer.  In re Volkswagen of
Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008).  A movant shows
"good cause" when it shows that "the transferee venue is clearly
more convenient."  Id.  In evaluating a motion to transfer, the
court must assess private and public interest factors.  The

---

[13] Section 1404(a) provides: "For the convenience of parties and
witnesses, in the interest of justice, a district court may
transfer any civil action to any other district or division
where it might have been brought . . . ."

[14] Section 1406(a) provides: "The district court of a district in
which is filed a case laying venue in the wrong division or
district shall dismiss, or if it be in the interest of justice,
transfer such case to any district or division in which it could
have been brought."  Because Gust's motion was granted on the
basis of § 1404(a), this Opinion does not address the merits of
Gust's arguments under § 1406.

private interest factors are: "(1) the relative ease of access
to sources of proof; (2) the availability of compulsory process
to secure the attendance of witnesses; (3) the cost of
attendance for willing witnesses; and (4) all other practical
problems that make trial of a case easy, expeditious and
inexpensive." Id. (citation omitted).  The public interest
factors are: "(1) the administrative difficulties flowing from
court congestion; (2) the local interest in having localized
interests decided at home; (3) the familiarity of the forum with
the law that will govern the case; and (4) the avoidance of
unnecessary problems of conflict of laws [or in] the application
of foreign law." Id. (citation omitted).  These factors are
"not necessarily exhaustive or inclusive," and "none can be said
to be of dispositive weight."  Id. (citation omitted).

Gust asserted the following facts in support of its motion.
Gust was incorporated in Delaware.  Gust does not, and never
has, resided in the Eastern District of Texas, nor has Gust ever
had a regular and established place of business in the Eastern
District of Texas.  Gust's only regular and established place of
business in the United States is in New York.  The alleged
infringing website was developed in New York, is hosted in New
York, and is administered by Gust employees in New York.
Accordingly, most, if not all, of Gust's witnesses, documentary
proof, and physical evidence is located in the Southern District

33

of New York.  To the extent any former Gust employees or individuals with knowledge of prior art could be relevant as third party witnesses, those individuals are much more likely to reside in the Southern District of New York than in the Eastern District of Texas.  Finally, with respect to the public interest factors, Gust argued that all public interest factors were in equipoise except for the factor regarding local interest.  According to Gust, this factor weighed in favor of New York since Gust is based in the Southern District of New York, and the employees involved in the development, operation, sales, and support of the accused infringing website are located there.

Notwithstanding these uncontroverted facts, AlphaCap filed a frivolous opposition and sur-reply to Gust's motion to transfer venue.  Before filing its opposition, however, AlphaCap moved for and obtained a nearly two-month period of venue discovery, pursuant to which Gust produced thousands of pages of documents identifying locations of users of Gust's software platform, along with employees, contractors, and third parties who helped develop the platform.

Despite this voluminous disclosure, AlphaCap could not identify a single piece of evidence located in or near the Eastern District of Texas.  Yet, in its opposition, AlphaCap argued that the Eastern District of Texas was a "far more convenient venue" because AlphaCap and Gust had connections to

34

California or Vancouver, Canada.  It pointed out that (1) the individuals and documents associated with AlphaCap and its patents are located in California; (2) both of AlphaCap's inventors are in California; (3) the patent attorney and agent who participated in the prosecution of the AlphaCap Patent reside in California; and (4) nearly half of Gust's technical employees are located in Vancouver, Canada.  Only one witness resided in Texas, and not in the Eastern District of Texas.  One of Gust's principal software engineers resides in Austin, Texas, and (5) nearly half of Gust's technical employees are located in Vancouver, Canada, which is closer to the Eastern District of Texas than New York.[15]  With regard to the public interest factors, AlphaCap argued that the Eastern District of Texas' faster trial schedule weighed slightly against transfer, and that the local interest factor was neutral because Gust was incorporated in Delaware, not New York.

None of AlphaCap's assertions make the Eastern District of Texas a more convenient or even appropriate forum under the law. First, absent the presence of a witness in the Eastern District of Texas, it is immaterial that the Eastern District of Texas is more centrally located than the Southern District of New York to

---

[15] Of course, travel between Vancouver and New York City is far easier than travel between Vancouver and the Eastern District of Texas.

California and Vancouver.  In In re Genentech, Inc., 566 F.3d
1338 (Fed. Cir. 2009), upon a petition for a writ of mandamus,
the Federal Circuit held that the district court for the Eastern
District of Texas abused its discretion and produced a patently
erroneous result by denying the defendants' motion to transfer.
In that case, no identified witness was a resident of the
Eastern District of Texas.  Accordingly, the Federal Circuit
held that "the district court improperly used its central
location as a consideration in the absence of witnesses within
the plaintiff's choice of venue."  Id. at 1344.  Similarly, in
this case, AlphaCap failed to identify a single witness located
in the Eastern District of Texas.  Moreover, AlphaCap's
assessment of the public interest factors failed to take into
consideration the fact that Gust has its principal place of
business in the Southern District of New York, and therefore
that the local interest factor weighed in favor of New York.

    In granting Gust's motion under § 1404(a), the Honorable
Robert W. Schroeder III of the Eastern District of Texas
acknowledged that "[t]he parties' ties to California and
especially New York outweigh any ties that the parties have to
this district.  Consequently, the Southern District of New York
is clearly a more convenient venue than this district."  Given
the baselessness of AlphaCap's opposition to Gust's motion to
transfer venue, this Court finds that AlphaCap's attorneys'

decision to engage in extensive venue discovery and to file a frivolous opposition and sur-reply was undertaken in bad faith.

## B. Proceeding with Infringement Action

AlphaCap's attorneys were aware as early as June 2014 (when Alice was issued) that their infringement claims were unlikely to succeed if the validity of the AlphaCap Patents was challenged.[16]  Nonetheless, they filed this patent infringement action in the Eastern District of Texas just seven months later. By July 2015, AlphaCap's counsel understood that Gust would not pay a license fee, wanted to insure that they would never again be confronted with these claims, and wanted to be reimbursed for the costs it had incurred in defending against frivolous litigation.  Gust's counsel threatened a § 285 motion to recover its fees.  AlphaCap's counsel also knew that AlphaCap was likely judgment proof -- a fact that it shared with Gust -- and that Juarez was more concerned with keeping his job than pursuing patent litigation.  Despite all of this knowledge, AlphaCap's

---

[16] The patent-ineligibility of the AlphaCap Patents was highlighted on June 29, 2015, when the Honorable Katherine Failla issued her opinion in Kickstarter.  The asserted patent in Kickstarter claimed a "system and method for raising financing and/or revenue by [an] artist for a project." Kickstarter, 2015 WL 3947178, at *1.  Similarly, the patents at issue in this case claim a computer-implemented method of managing information related to "financing" and "equity and debt financing," and that provide related "data collection templates."

counsel litigated the Texas and New York Actions for another ten months.

Instead of withdrawing its infringement claims and issuing the Covenant in July 2015 to gain dismissal of Gust's counterclaims, AlphaCap's counsel continued to prosecute the Texas Action. Nor did AlphaCap's counsel issue the Covenant in August 2015 after Gust filed the New York Action. It waited until May 2016 to do so. Because AlphaCap and its counsel preferred to continue the litigation, Gust was forced to hire a firm to perform prior art searches and to prepare detailed invalidity contentions in accordance with the Eastern District of Texas' Local Patent Rules.[17] Moreover, AlphaCap refused to respond to Gust's interrogatories relating to the validity of the AlphaCap Patents, and opposed Gust's motion to compel responses to those interrogatories. Finally, the parties were forced to proceed with proposed claim construction, a joint claim construction statement, and full claim construction briefing.

---

[17] Patent Rule 3-3 of the Eastern District of Texas' Local Patent Rules requires a party opposing a claim of patent infringement to identify, within 45 days after service upon it of the disclosure of asserted claims and infringement contentions, "each item of prior art that allegedly anticipates each asserted claim or renders it obvious," to provide an explanation of how the prior art anticipates each asserted claim or renders it obvious, and to provide a chart identifying "where specifically in each alleged item of prior art each element of each asserted claim is found."

In sum, AlphaCap's counsel's decision to proceed with the litigation for as long as it did, and to make it expensive for Gust to defend against the litigation, reflects counsel's tactical and bad faith motivation.  AlphaCap's counsel chose to multiply and prolong the proceedings in this case needlessly.  AlphaCap's counsel has provided no explanation for why it waited to issue the Covenant until almost eighteen months after Gust announced its refusal to settle the case without being reimbursed for costs.  The only reasonable inference to be drawn from this chronology is that AlphaCap's counsel wished to avoid a ruling on the validity of the AlphaCap Patents, and filed the Covenant to forestall such a ruling.

## IV.  Calculating Gust's Award

Attorneys' fees awards under § 285 are typically calculated using the "lodestar" method.  The lodestar number is "a presumptively reasonable fee amount," and is assessed by "multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case."  Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 483 (Fed. Cir. 2016).  "An hourly rate is reasonable if it is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  SUFI Network Servs., Inc. v. United States, 785 F.3d 585, 594 (Fed. Cir. 2015) (citation omitted).  The

determination of reasonable attorneys' fees is "a matter that is committed to the sound discretion of a district court judge." Lumen View, 811 F.3d at 483 (citation omitted).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). To aid in calculating the lodestar number, the prevailing party must provide contemporaneous time records, affidavits, and other materials to support its application for the amount of reasonable hours expended. McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. Under § 285, the time spent on preparing the fee petition itself is also compensable. See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("§ 285 held to include lawyer's fees for time spent on the issue of attorney fees . . . " (citation omitted)).

Fee requests should be reduced to exclude hours that are not "reasonably expended," such as those that are excessive or redundant. Hensley, 461 U.S. at 434 (citation omitted). Moreover, where a claimant "has achieved only partial or limited success," a court "may attempt to identify specific hours that

40

should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-37.

Gust seeks $621,549 in fees and costs. Gust supported this request by disclosing its contemporaneous, detailed time records reflecting its counsel's work.

AlphaCap concedes that Gust is the prevailing party with respect to AlphaCap's infringement claims. Moreover, AlphaCap does not challenge the reasonableness of Gust's attorneys' hourly rates. But, AlphaCap does argue that the number of hours that Gust's attorneys expended on this litigation was unreasonable. With the exception of the number of hours that Gust's attorneys spent on this motion for attorneys' fees, however, the opposition to this request for fees does not contend that an unreasonable number of hours was spent on any specific task. For instance, it makes no complaints about the level of staffing for a task and does not point to any unnecessary duplication of effort on any particular assignment. Instead, the opposition is made in broad strokes.

AlphaCap asserts that too many hours of attorney time were spent either before or after July 2, 2015, or that the New York litigation should not have been filed. Specifically, AlphaCap disputes the award of attorneys' fees for (1) 170 hours spent before July 2, 2015, (2) 1,085 hours spent after July 2, 2015, and (3) 100 hundred hours spent preparing the motion for

attorneys' fees.  Additionally, AlphaCap disputes the award of attorneys' fees for work performed on the dismissed affirmative claims in the New York Action.

For the reasons stated below, one of these objections is justified.  The amount of $113,206 is deducted from Gust's award due to Gust's partial success in the New York Action.  This amount reflects the work performed on Gust's dismissed affirmative claims.

### A. Hours Before July 2, 2015

AlphaCap argues that it was unreasonable for Gust's attorneys to expend 170 hours of time on this litigation over the five months before July 2, 2015.  On July 2, AlphaCap's counsel told Gust's lawyers that the case was not worth litigating and offered to dismiss the action against Gust with prejudice.

Gust has shown that the time spent by its counsel during this interval was entirely reasonable.  Its attorneys spent their time communicating with the nine other sets of defendants sued by AlphaCap in the Eastern District of Texas on the same day, collecting prior art related to the AlphaCap Patents, preparing a motion to transfer venue, initiating an invalidity analysis, reviewing the prosecution history of the three AlphaCap Patents, and drafting an answer with counterclaims

challenging the validity of the AlphaCap Patents and the claims of infringement.

## B. Hours After July 2015, Including Filing of New York Action

AlphaCap faults Gust's attorneys for expending over 1,085 hours on the case after July 2, 2015, when AlphaCap first proposed a walkaway settlement.  AlphaCap states in its opposition: "All of that time expended by Gust's counsel was unreasonable, as Gust's position is exactly the same as it would have been had it accepted AlphaCap's offer a year ago -- AlphaCap dismissed its claims against Gust with prejudice." AlphaCap asserts as well that Gust's initiation of a second lawsuit was unnecessary since it included only claims that were duplicative of those filed in the Texas Action or meritless claims.

AlphaCap's assignment of blame is misdirected.  Gust was not required to walk away from the lawsuit AlphaCap filed against it and bear its own attorneys' fees, at least where it believed that lawsuit to be frivolous and conducted in bad faith.  If AlphaCap wanted to avoid running up costs in this litigation, it could have promptly applied to dismiss its claims in the Texas Action with prejudice and it could have issued a covenant not to sue in July 2015, thereby mooting Gust's counterclaims in the Texas Action and preempting the declaratory

judgment claims in the New York Action.  Instead, because AlphaCap continued to prosecute the Texas Action, Gust was required to comply with the Eastern District of Texas Local Patent Rules and to respond to AlphaCap's discovery demands. Among other things, Gust was forced to prepare invalidity contentions, to hire a firm to perform prior art searches to assist in that process, and to prepare and brief claim construction.

Nor can AlphaCap reasonably complain that Gust moved to transfer venue to its home district or that it filed the New York Action.  If forced to litigate, AlphaCap was entitled to try to do so in its home district, particularly when there was no connection between the Eastern District of Texas and this dispute.  While AlphaCap may have been entitled to initiate suit against Gust for patent infringement in the Eastern District of Texas,[18] it certainly should not have resisted the transfer of the Texas Action to the Southern District of New York.  The decisions made by AlphaCap in this case made the litigation far more prolonged and expensive for Gust and there is no unfairness

---

[18] While the law may allow a filing of AlphaCap's lawsuit in the Eastern District of Texas, the wisdom and fairness of AlphaCap's tactical choice to do so is certainly open to question.  Once Gust objected to that venue, which had absolutely no connection to either party or this dispute, then there is no unfairness in imposing on AlphaCap the extra costs that Gust incurred for having to defend this "extraordinary" lawsuit in that venue for a period of time.

in requiring AlphaCap to bear the costs it imposed on its adversary.

At bottom, it was AlphaCap that controlled the length and expense of this litigation.  It chose to file this lawsuit and bears responsibility for its length and complexity.  It was only in order to escape a ruling on the validity of the AlphaCap Patents that it chose to file the Covenant.  Once the attorneys' fees associated with Gust's Sherman Act and state law claims are subtracted, AlphaCap has not pointed to any fees associated with a task that Gust's attorneys should not have undertaken or that they were not sufficiently efficient in performing.

**C. Hours on Attorneys' Fees Application**

AlphaCap objects to the expenditure of nearly one hundred hours on an attorneys' fees motion.  This objection is rejected as well.

In bringing this motion, Gust bore the burden of proving that this case was exceptional and that § 1927 authorized the award of fees jointly against AlphaCap's counsel.  These requests are serious and should not be made lightly or without adequate support.  Accordingly, Gust set out the history of this litigation, why the AlphaCap Patents were patent ineligible under the Alice standard, and why AlphaCap's litigation strategy was unreasonable at every stage of the litigation.  It also prepared four affidavits to support the application and

submitted the documentation required to support the amount it was requesting.  Gust has shown that it is entitled to the award for all the fees and costs associated with making this motion.

## CONCLUSION

Gust is awarded $492,420 in attorneys' fees and $15,923 in costs, for a total of $508,343, jointly and severally against AlphaCap Ventures, LLC and Gutride Safier LLP.  Prejudgment interest is awarded at a rate of 9%.

Dated:    New York, New York
          December 8, 2016

_____
DENISE COTE
United States District Judge

46